UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.   CASE NO: 3:18-cr-206-MMH-LLL

CARISSA RIAN RATLIFF

ORDER ON MOTION FOR
SENTENCE REDUCTION UNDER
18 U.S.C. § 3582(c)(1)(A)

**ORDER**

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☒ DENIED after complete review of the motion on the merits.

☒ FACTORS CONSIDERED

Defendant Carissa Rian Ratliff is a 40-year-old inmate incarcerated at Alderson FPC, serving a 36-month term of imprisonment for conspiracy to distribute 50 grams or more of actual methamphetamine. (Doc. 318, Judgment). According to the Bureau of Prisons (BOP), she is scheduled to be released from prison on February 13, 2024. Ratliff moves for compassionate release because her teenage children's grandmother – who was the children's

caregiver – passed away on December 1, 2021. (Doc. 351, Motion; Doc. 351-1, Exhibits). The United States responded in opposition. (Doc. 353, Response).

A district court "may not modify a term of imprisonment once it has been imposed," except under certain circumstances defined by statute. 18 U.S.C. § 3582(c). One of those exceptions is § 3582(c)(1)(A), which provides:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that … extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i). The Eleventh Circuit Court of Appeals instructs that U.S.S.G. § 1B1.13 is the applicable policy statement for all § 3582(c)(1)(A) motions, and that "a district court cannot grant a motion for reduction if it would be inconsistent with the [Sentencing] Commission's policy statement defining 'extraordinary and compelling reasons.'" United States v. Bryant, 996 F.3d 1243, 1247, 1249 (11th Cir.), cert. denied, 142 S. Ct. 583 (2021); see also U.S.S.G. § 1B1.13, cmt. 1 (defining "extraordinary and compelling reasons"). A movant for compassionate release must prove that a reduction in sentence is warranted. United States v. Kannell, 834 F. App'x 566, 567 (11th Cir. 2021)

(citing United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014)). "Because the statute speaks permissively and says that the district court 'may' reduce a defendant's sentence after certain findings and considerations, the court's decision is a discretionary one." United States v. Harris, 989 F.3d 908, 911 (11th Cir. 2021).

"[B]y dint of § 3582(c)(1)(A)'s plain text, a district court may reduce a term of imprisonment if (1) the § 3553(a) sentencing factors favor doing so, (2) there are 'extraordinary and compelling reasons' for doing so, and … (3) doing so wouldn't endanger any person or the community within the meaning of § 1B1.13's policy statement." United States v. Tinker, 14 F.4th 1234, 1237 (11th Cir. 2021). The statute does not require a district court to analyze these three requirements in any particular order. Id. "Because all three conditions – i.e., support in the § 3553(a) factors, extraordinary and compelling reasons, and adherence to § 1B1.13's policy statement – are necessary, the absence of even one would foreclose a sentence reduction." Id. at 1238.

As relevant here, the policy statement defines "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" as an "extraordinary and compelling reason" for a sentence reduction. U.S.S.G. § 1B1.13, cmt. 1(C)(i). Unlike Application Note 1(C)(ii) (concerning the incapacitation of the defendant's spouse or registered partner), Application Note 1(C)(i) does not require a defendant to show that no other caregiver is

3

available for a minor child. Nevertheless, in applying Application Note 1(C)(i), other courts have "consider[ed] whether the need for a caretaker is so dire that the inmate is the only feasible option" and what is in "the best interests of the child." United States v. Hunter, No. 3:19-cr-182, 2021 WL 4942168, at *3 (S.D. Ohio Oct. 22, 2021) (collecting cases); United States v. Davis, No. 2:13-cr-46-8-JRG, 2021 WL 829367, at *8 (E.D. Tenn. Mar. 4, 2021) (denying motion for compassionate release where defendant failed to show that minor son's biological mother and three aunts were unavailable to care for him). Thus, while Application Note 1(C)(i) does not require the defendant to show the unavailability of another caregiver, the availability of a competent and willing caregiver may inform the exercise of the Court's discretion. See Harris, 989 F.3d at 911 (noting that a court's decision under 18 U.S.C. § 3582(c)(1)(A) "is a discretionary one.").

Ratliff seeks compassionate release because she has two teenage children whose grandmother and caregiver passed away. Motion at 1–2. The children were temporarily residing with a family friend in Colorado when Ratliff filed her latest administrative request for a reduction-in-sentence (RIS).[1] (Doc. 351-1, RIS Request at 3). In the RIS Request, Ratliff told the

---

[1] Ratliff filed her first RIS request within three weeks of reporting to prison (before the children's grandmother had passed away), arguing she should be released because the grandparents' home had burned down and the grandparents (who Ratliff arranged to care for the children) were "old and sick and have medical conditions." (See Doc. 353-1 at 2).

4

warden that she had spoken with a Florida Department of Children and Families (DCF) case worker, who purportedly advised Ratliff that "there [would] be no problem" with Ratliff taking custody of the children were she to be released. Id. at 4. Ratliff told the warden she could not provide a letter from the case worker "because there [was] no open child case against [Ratliff]." Id. The warden denied Ratliff's request because she had not shown that no other caregiver was available. Id. at 16 (Warden's Decision). Ratliff states that she has a father who lives in North Carolina and a brother who lives in Tennessee (among other family members), but that her other family members are unwilling or unable to care for two teenagers. Motion at 1. According to Ratliff, the children's now-deceased grandmother was the only person willing and able to care for the children. Id. at 1–2.

The government responds that, "[w]hile a caregiver of the minor children has passed away, the circumstances do not warrant the defendant's release." Response at 10 (emphasis in original). The government states:

> The undersigned spoke with both the case worker in Colorado and in Florida and has also reviewed reports from the Florida Department of Children and Families (DCF). There was an altercation that resulted in the defendant's two minor children being unable to reside with the defendant's friend in Colorado, which led to them returning to Florida. However, they have been residing with the defendant's adult son and his girlfriend. Contrary to the defendant's representations, the case worker here in Florida has never spoken with the defendant and therefore never discussed whether the children could reside with her if released. Rather, the focus was on who was caring for the children currently and that they had somewhere to live that was appropriate. DCF concluded that the defendant's son's home was appropriate, and

5

>the defendant's son confirmed the defendant's minor children could continue residing with him. There was no further involvement needed by DCF, so there is no open case.

<u>Id.</u> The government argues:

>While this may not be the defendant's ideal circumstances for raising her children, the defendant's adult son appears to be a suitable caregiver, as determined by DCF. The defendant had ample time to make better arrangements for her children given she was released on bond in December of 2018 and had her sentencing continued numerous times to allow her to do various things for her children, including finding someone to care for them. The defendant had several years to make plans for the care of her children.

<u>Id.</u> at 10 (footnote omitted). Indeed, the Court continued the sentencing hearing three times at Ratliff's request because she said she was the children's sole caregiver, she was trying to arrange care for the children, and she wanted to get the children and herself vaccinated against COVID-19 before she began her term of imprisonment. (Docs. 291, 292, 296, 297, 307, 308). But Ratliff never got the COVID-19 vaccine and she rejected it twice after she entered BOP custody. (Docs. 353-6, 353-7, Vaccine Records).

The government also expresses "serious concerns" about Ratliff's proposed plan to live with her fiancé and children if released. Response at 10 n.5. According to the government, Ratliff's fiancé appears to be Christopher D. Werley, a convicted felon who was released from prison in January 2021. <u>Id.</u> Mr. Werley spent eight years in prison for one count of aggravated battery with a deadly weapon and one count of aggravated battery with intent to harm. <u>Id.</u> The government argues: "While it is undoubtedly difficult for the defendant to

6

not be present to raise her children, it is a natural consequence for engaging in drug trafficking numerous times and having to serve time for her offense. [And], the defendant fails to establish herself as the only <u>available</u> caregiver." <u>Id.</u> at 11 (emphasis in original) (citations omitted).

Under a strict interpretation of Application Note 1(C)(i), the death of the children's grandmother and caregiver qualifies as an extraordinary and compelling circumstance, regardless of the availability of another caregiver. However, the government's discussions with the DCF case worker reflect that Ratliff's teenage children have a suitable and willing caregiver in Ratliff's adult son and his girlfriend. Response at 10. The Court also shares the government's concerns about Ratliff's proposed release plan. In the exercise of its discretion, the Court does not find that compassionate release is warranted at this time.[2]

Moreover, the sentencing factors under 18 U.S.C. § 3553(a) do not support a reduction in sentence. Ratliff was convicted of a serious controlled substance offense after two prior convictions for the sale of methamphetamine failed to deter her from reoffending. (<u>See</u> Doc. 289, Presentence Investigation

---

[2] Ratliff filed a reply brief (Doc. 354) without leave of Court, <u>see</u> M.D. Fla. Local Rule 3.01(d). In the reply, Ratliff states that the children are not residing with her adult son but with the adult son's girlfriend, whom Ratliff contends is unable to care for the children. However, the emails that Ratliff attached in support of her assertions (Doc. 354-1) predate the Motion for Compassionate Release and the government's Response by a month or more, and thus may be a stale source of information. But assuming Ratliff's assertions are true, the emails reflect that the son's girlfriend is willing to assume temporary custody of the children. (<u>See</u> Doc. 354-1 at 2). Moreover, Ratliff does not address the government's concerns regarding her release plan.

7

Report [PSR] ¶ 51). Ratliff began serving her term of imprisonment in earnest on August 16, 2021.[3] To date, she has served only about nine months in prison, which is a fraction of the 36-month term of imprisonment that was imposed and a smaller fraction of the advisory sentencing guidelines range of 57 to 71 months in prison. See id. ¶ 96. The PSR also indicates that Ratliff has struggled with substance abuse, id. ¶¶ 80–82, such that the Court recommended her for residential substance abuse treatment, Judgment at 2, which the Court hopes she can take advantage of while in custody. The Court commends Ratliff for her desire to raise her children. However, in view of all the § 3553(a) factors, including the need to promote respect for the law, afford adequate deterrence, and provide needed correctional treatment, reducing Ratliff's sentence is not warranted at this time.

Accordingly, the Motion for Compassionate Release (Doc. 351) is **DENIED**. Ratliff's request for the appointment of counsel is likewise **DENIED** because the facts and the law are not complex and she is capable of presenting her arguments. See United States v. Cuya, 855 F. App'x 665, 666 (11th Cir.

---

[3] Ratliff spent about a month in jail before being released on December 20, 2018, on an unsecured appearance bond. PSR at ECF p. 1.

2021) (citing United States v. Webb, 565 F.3d 789, 794–95 (11th Cir. 2009)).

**DONE AND ORDERED** at Jacksonville, Florida this 19th day of April, 2022.

*[signature]*
MARCIA MORALES HOWARD
United States District Judge

lc 19
Copies:
Counsel of record
Defendant